MILLER BREWING COMPANY, Plaintiff-Respondent,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Appellant,

Richard SIMMONS, Defendant.

Court of Appeals

*No. 79–1782. Submitted on briefs August 6, 1981.—
Decided June 25, 1981.*
(Also reported in 308 N.W.2d 922.)

For the defendant-appellant the cause was submitted on the briefs of *Uclair W. Brandt,* director and *James L. Pflasterer,* deputy director, Department of Industry, Labor and Human Relations.

For the plaintiff-respondent the cause was submitted on the brief of *Gregory S. Pokrass* and *Quarles & Brady* of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. The issue on this appeal is whether an employee discharged for falsifying an employment application with respect to criminal convictions and military discharge is eligible for benefits under the Unemployment Compensation Act, ch. 108, Stats. Richard Simmons (employee) appeals from a circuit court judgment reversing a decision and order of the Labor and Industry Review Commission (commission) that he was not disqualified from benefits for employment-related "misconduct" within the meaning of sec. 108.04(5). We affirm.

The material facts are undisputed. The employee was hired as a brewery worker by Miller Brewing Company (employer) on March 3, 1975 after filing a written job application. One of the questions on the application form was, "Have you ever been convicted of a crime other than traffic violations?" The employee responded "no." In fact he had been convicted of disorderly conduct in 1965, of nonsupport in 1967, and of the abandonment of his family in 1970. The disorderly conduct conviction was based on a fight with police officers who were attempting to arrest the employee for a reason not specified in the record.

The employee left blank that portion of the form inquiring into his military service. He had served in the Air Force from 1953 to 1956, when he received an undesirable discharge for being AWOL and for breaking other restrictions. The last paragraph of the application form, which was signed by the employee, provided that misstatements or omissions of material facts would constitute grounds for termination of the employment.

The employer had a policy of refusing to hire persons who had been convicted of crimes, whether or not they

were related to the nature of the employment. The employee had applied for a job with the employer in 1973 and 1974, responding truthfully to the questions on the application form. He had been rejected for employment on both occasions. He testified that he falsified the third application because he needed the job, having been unemployed almost continuously since 1973, and because he believed he would not be hired if he answered the questions truthfully. Testimony of company representatives confirmed that he would not have been hired if he had disclosed his criminal record.

The employee's past record became known to the employer during the investigation of a complaint in May 1977 that the employee had threatened a supervisor. His discharge was not based upon the alleged threat, which was not proven, but upon the falsification of the application.

Section 108.04(5), Stats., provides that an employee is ineligible for benefits if he or she has been discharged "for misconduct connected with his employment." No definition of "misconduct" is provided in ch. 108. The Wisconsin Supreme Court defined the term in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941), as follows:

The application of these principles leads to the conclusion . . . that the intended meaning of the term "misconduct," as used in sec. 108.04(4)(a) [currently sec. 108.04(5)], Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. . . . [M]ere inefficiency, unsatisfactory

conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

This definition has been consistently cited with approval in cases since *Neubeck* which have emphasized the employee's intent and attitude in determining whether disqualifying misconduct has occurred. Benefits may not be denied unless the employee's conduct amounts to an "intentional and substantial disregard of"[1] or an "intentional and unreasonable interference with"[2] the employer's interests.

In reversing the appeal tribunal's determination that the falsification of the application constituted misconduct within the meaning of sec. 108.04(5), Stats., the commission acknowledged the employer's "legitimate right to require accurate record keeping," but stated that "the mere request for information regarding prior conviction records on an employment application tends to induce false or incomplete answers to avoid non-consideration for hire." It held that the employee's falsifications did not constitute misconduct given the reasons for the omissions, criminal convictions, the length of his service for the employer without serious incident, and the "little relevance" of his criminal acts to his job as a forklift driver.

---

[1] *Vocation. Tech. & Adult Ed. Dist. 13 v. ILHR Dept.*, 76 Wis.2d 230, 245, 251 N.W.2d 41, 49 (1977); *McGraw-Edison Co. v. ILHR Dept.*, 64 Wis.2d 703, 712, 221 N.W.2d 677, 682 (1974); *Tate v. Industrial Comm.*, 23 Wis.2d 1, 5, 126 N.W.2d 513, 515 (1964); *Milwaukee Transformer Co. v. Industrial Comm.*, 22 Wis.2d 502, 511, 126 N.W.2d 6, 11 (1964).

[2] *Eastex Packaging Co. v. DILHR*, 89 Wis.2d 739, 752, 279 N.W.2d 248, 254 (1979); *Baez v. ILHR Department*, 40 Wis.2d 581, 588, 162 N.W.2d 576, 579 (1968); *Milwaukee Transformer Co., supra*, at 511–12, 126 N.W.2d at 12.

Subsequent to the employee's discharge, but prior to the commission's decision in this matter, the legislature amended the Wisconsin Fair Employment Act (WFEA), secs. 111.31 through 111.37, Stats., to include an arrest and conviction record as a prohibited factor of discrimination in employment.[3] Although the commission's decision does not refer to WFEA, it argues that these amendments are entitled to weight in determining the issue on appeal. The legislature's prohibition of employment discrimination on the basis of an applicant's criminal record unless the circumstances of the crime(s) "substantially relate to the circumstances of the particular job," it urges, supports its conclusion that only those falsifications which are material to the job constitute "misconduct" within the meaning of sec. 108.04(5), Stats.

---

[3] Newly created sec. 111.32(5)(h), Stats., reads in pertinent part:

The term "conviction record" includes, but is not limited to, information indicating that a person has been convicted of any felony, misdemeanor or other offense, placed on probation, fined, imprisoned or paroled pusuant to any law enforcement or military authority. *It is discrimination because of arrest record or conviction* record:

. . . .

2. *For any employer* . . . to refuse to hire, employ, admit or license any person, or *to bar or terminate any person from employment,* membership or licensing, or to discriminate against any person in promotion, compensation, terms, conditions or privileges of employment, membership or licensing, or otherwise to discriminate against any person *because such person has an arrest record or a conviction record; provided, however, that it shall not be unlawful:*

. . . .

b. *For an employer* . . . to refuse to employ . . . or *to* bar or *terminate from employment* . . . *any person who has been convicted of any* felony, misdemeanor or other *offense the circumstances of which substantially relate to the circumstances of the particular job* . . . . [Emphasis supplied.]

■

The circuit court held that the WFEA amendments were prospective and thus not entitled to consideration. It did not expressly rule on the question whether a particular falsification must be material to the particular job to constitute misconduct. It determined, however, that employers have an interest in having questions concerning criminal records and military discharge answered truthfully.

The court noted that the employee's conviction for disorderly conduct might well have been considered material by the employer in assessing the applicant's suitability for employment. The court stated that while none of the other items of withheld information, standing alone, would have significant materiality to the job, the cumulative effect of the omissions deprived the employer of information which it had a right to know. It held that the employee was thereby guilty of substantially disregarding the interests of the employer and therefore of misconduct within the meaning of sec. 108.04(5), Stats.

■

Our standard of review on appeal is the same as that of the circuit court.[4] The question whether an employee's conduct constitutes "misconduct" within the meaning of the statute is a question of law.[5] While the reviewing court will give weight to the interpretation of a statute by the agency charged with its application,[6] its interpretation is not binding on the court.

---

[4] *Sanitary Transfer & Landfill, Inc. v. DNR*, 85 Wis.2d 1, 12, 270 N.W.2d 144, 149 (1978); *Milwaukee v. Wis. Employment Relations Comm.*, 43 Wis.2d 596, 600, 168 N.W.2d 809, 811 (1969), quoting *Scharping v. Johnson*, 32 Wis.2d 383, 389, 145 N.W.2d 691, 695 (1966).

[5] *Consolidated Const. Co., Inc. v. Casey*, 71 Wis.2d 811, 816, 238 N.W.2d 758, 761 (1976); *McGraw-Edison Co.*, note 1 *supra*, at 713, 221 N.W.2d at 683.

[6] *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis.2d 44, 48, 257 N.W.2d 855, 857 (1977).

[A reviewing court] has the power in the first instance to determine whether the standard or policy choice used by the agency is consistent with the purpose of the statute. If upon consideration, we determine that a particular rule is consistent with legislative purpose, we must reject alternative rules regardless of whether they are "reasonable" or grounded in administrative expertise. *Milwaukee Transformer Co. v. Industrial Comm.,* 22 Wis. 2d 502, 511, 126 N.W.2d 6, 11 (1964).

The question whether the falsification of an employment application constitutes misconduct disentitling the employee to unemployment compensation benefits has not been considered by an appellate court in Wisconsin. The circuit court relied on two Dane County Circuit Court decisions affirming commission decisions that employees who failed to disclose prior convictions were not entitled to benefits.[7] The employee urges that this court adopt "the more modern approach," citing *Unempl. Comp. Bd. of Review v. Dixon,* 27 Pa. Commw. Ct. 8, 365 A.2d 668 (1976), and *Casias v. Indust. Comm.,* 38 Colo. App. 261, 554 P.2d 1357 (1976).

*Dixon* involved an employee who was discharged for falsely representing that he had no criminal record. The employer did not contest his claim for benefits. The nature of the employee's criminal acts was not introduced into evidence. In reversing the agency's determination that the employee was disqualified for benefits by misconduct, the Commonwealth Court of Pennsylvania stated:

While any deliberately false answer to an inquiry on an employment application would appear on superficial glance to fall within one or more of the descriptions of willful misconduct, it seems to us that a profounder view

---

[7] *Novak v. Coca Cola Bottling Co. of Wis. & DILHR,* 5/17/1976, Wisconsin Unemployment Compensation Digest, p. MC 84; *Disch v. Ind. Com. & Brewing Co.,* 1/13/1958, Wisconsin Unemployment Compensation Digest, p. MC 81.

suggests that the information invited by the application and falsely provided should concern matters material to the employment sought for the errant answer to be disqualifying for unemployment benefits. 27 Pa. Commw. Ct. at 11, 365 A.2d at 669. [Citation omitted.]

In *Casias,* the Colorado Court of Appeals applied the concept of materiality to hold that an employee who had falsified his application with respect to his history of epilepsy was entitled to benefits. In doing so it rejected the contention that such a rule would foster dishonesty or that it would deprive employers of information necessary to the screening process, stating:

As to the encouragement of misrepresentations, we conclude . . . that there is no "condonation [of] falsehood" when a court insures that employees are "shielded against arbitrary or even, at any future time, partisan action of commissions established for their protection." Nor is the employer unduly burdened by the rule stated here. He retains as much latitude to select and discharge employees as he previously possessed. But the employer may not, by premising a discharge on an immaterial untruth, deprive the employee of a system of benefits mandated by law for the employee's protection. 38 Colo. App. at 264, 554 P.2d at 1359–60.

The employee suggests that the concept of materiality endorsed in *Dixon* and *Casias* and adopted by the Wisconsin legislature with respect to hiring, discharge, promotion, and other employment decisions in the WFEA amendments constitutes the modern and humane approach for dealing with the well-documented problems of ex-offenders in the employment marketplace. The employer, on the other hand, contends that *any* falsification of a job application form constitutes misconduct. It cites several commission and appeal tribunal decisions in support of this position relating to falsifications about matters including, but not limited to, criminal records.

We need not endorse the employer's broad position in rejecting that of the commission. It may be that some types of falsifications are so trivial or so remote from the legitimate scope of an employer's concern that they would not amount to a substantial interference with the employer's interests. That is not the case before us.

We also need not determine whether the circuit court correctly concluded that the WFEA amendments could not be considered because they were prospective in application. We deem the amendments to be irrelevant to the issue presented by this case.

The purpose of the WFEA amendments was to secure to the ex-offender his or her rights to compete in the employment marketplace free from arbitrary and stigmatic determination made on the basis of a criminal record which bears no "substantial relationship" to the employment. The fact that the amendments employ a rule of materiality in accomplishing this purpose lends no support to the commission's apparent position that an applicant is guilty of misconduct under ch. 108, Stats., if he falsifies an application as to material crimes, but not if he falsifies as to crimes immaterial to the employment. By imposing sanctions against an employer who makes employment decisions on the basis of crimes immaterial to the employment, WFEA presupposes that the employee's criminal record is known to the employer, and that the employer will make some judgment concerning it. WFEA prohibits arbitrary discrimination. It does not prohibit an employer from asking questions about criminal records; it does not create a license in the employee to lie about those records.

An employer who is entitled to ask a question is entitled to receive an honest answer and to rely on it. To hold that a falsification concerning a material crime constituted misconduct, but that a falsification with respect to an immaterial crime did not, would exclude the

employer altogether from the determination of materiality.

Moreover, the commission's position overlooks the possibility that an employee hired to one position may be transferred or promoted to another. A crime immaterial to the position applied for may well be material to a subsequent position. *Cf. Barnett v. Unempl. Comp. Bd. of Review,* 47 Pa. Commw. Ct. 360, 408 A.2d 195 (1979). The substantial interests of the employer are therefore at stake, even if they are not immediately impaired, by any falsification with respect to a criminal record.

We hold that such a falsification reflects an intentional disregard of those interests, constituting misconduct within the meaning of sec. 108.04(5), Stats. In light of this holding we need not determine whether the falsifications here at issue were material to the employee's particular job.

*By the Court*—Judgment affirmed.